UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jeffery O. Davis, | No.  1:25-cv-01511-GSA |
| Plaintiff, | **OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| v. | |
| Commissioner of Social Security, | |
| Defendant. | (ECF Nos. 10, 13) |

**I.      Introduction**

Plaintiff Jeffery Davis seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (SSDI) pursuant to Title II of the Social Security Act.[1]

**II.     Procedural Background**

Plaintiff applied for Title II disability benefits on June 21, 2021, alleging disability since December 28, 2018.  AR 398–404. The application was denied at the initial and reconsideration levels on November 2, 2021 and May 5, 2022, respectively.  AR 190–93, 195–98. After an administrative hearing, ALJ Ngyuen issued a favorable decision finding Plaintiff disabled since December 28, 2018. AR 62–80, 170–80.

The Appeals Council, on its own motion, reviewed and remanded his case for a new

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  See ECF No. 5–7.

1

decision. AR 181–89. On March 13, 2024 and January 7, 2025, Plaintiff appeared and testified at two hearings presided over by ALJ Matilda Surh.  AR 81–117.  On February 10, 2025, ALJ Surh issued a written decision finding Davis not disabled. AR 14–37.  On September 19, 2025, the Appeals Council denied Plaintiff's request for review, and this appeal followed. AR 1–6.

### III.   The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a Claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but it is less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation and quotations omitted).

When performing this analysis, the court must consider the entire record as a whole and may not affirm simply by isolating a specific portion of supporting evidence. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the Agency's decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his/her physical or mental impairment or impairments are of such severity that he/she is

not only unable to do his previous work, but cannot, considering his/her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists for him/her, or whether he/she would be hired if he/she applied for work.  42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for an ALJ to employ when evaluating the alleged disability of a Claimant.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the Claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a Claimant has engaged in substantial gainful activity during the period for which Plaintiff is alleging he or she experiences a disability; 2- whether the Claimant had medically determinable "severe impairments" affecting the claimants ability to perform basic work activities; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in the agency's regulations (20 C.F.R. § 404, Subpart P, Appendix 1); 4- whether the Claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the Claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden then shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given a Claimant's RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.   The ALJ's Decision**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 28, 2018, the alleged onset date.  AR 19–20.  At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine/post fusion and laminectomy and revision, left knee meniscus tear, and tremor.  AR 20. The ALJ also found at step two that Plaintiff had the following non-severe impairments: carpal tunnel syndrome,

3

headaches, obesity, diabetes mellitus, shortness of breath, and depressive disorder. AR 20–22. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listing. AR 22.

Before proceeding to step four the ALJ determined that Plaintiff had the residual functional capacity (RFC) to "perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except the need to change positions from sitting to standing would be accommodated by scheduled breaks and lunch period." AR 22.

At step four, the ALJ determined that Davis could not do his past relevant work. AR 27–28. At step five, the ALJ determined that based on the VE's testimony Plaintiff could perform the following jobs existing in significant numbers in the national economy: final assembler, document preparer, and order clerk. AR 28–29.

Accordingly, the ALJ found that Plaintiff was not disabled since the alleged disability onset date of December 28, 2018. AR 29.

**V.    Issues Presented**

Plaintiff asserts one claim of error: "The RFC assessment is not supported by substantial evidence because the ALJ did not meet her burden of showing that Davis was not illiterate." MSJ at 9, ECF No. 10.

**A.    RFC**

**1.    Applicable Law**

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which comprises the most that a claimant is still capable of doing despite the claimant's particular limitations. This RFC represents an assessment "based on all the relevant evidence" contained within the Certified Administrative Record. 20 C.F.R. § 416.945(a)(1). The residual functional capacity must consider all of the claimant's impairments, whether those impairments are severe or non-severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

**2.    Analysis**

4

### a.  Factual Background

Plaintiff alleged disability due to degenerative disc disease, knee injury, and a history of special education services. AR 398, 464–65. Special education records from when he was 16 years old show that his reading decoding score was at the 1.8 grade level, his reading comprehension scores were at the 1.6 grade level, and his composite reading score was at the 1.5 grade level. AR 625–26. He cannot follow written directions. AR 498, 509, 530, 542. He has difficulties reading labels on bottles, cannot tell if something is hand soap or a chemical, and accidentally burnt a child's eyes when working as a custodian. AR 124, 518.  He also did not know how to read the ingredient labels while making pizzas and never prepared them correctly. AR 124. He needs help reading mail and filling out forms. AR 518.

Plaintiff otherwise "stipulates that the ALJ's decision fairly and accurately summarized the material medical evidence but argues that the ALJ mischaracterized the evidence about his ability to read and omitted discussion of his education records."  MSJ at 5, ECF No. 10.

### b.  Discussion

Plaintiff's argument begins with an incorrect premise that "The RFC assessment is not supported by substantial evidence because the ALJ did not meet her burden of showing that Davis was not illiterate." MSJ at 9, ECF No. 10 (emphasis added).  The ALJ does not have such a burden.

Next, setting aside generalized summaries and overviews of applicable law, Plaintiff's argument is fairly concise which begins on page 10 of a 13-page brief.  Plaintiff initially explains as follows:

> Here, the ALJ considered and rejected Davis's allegation that he was illiterate. AR 21, 23. She stated that he initially reported being able to follow both written and spoken instructions "okay." AR 21 (citing Exhibit 4E at 10, now AR 498). But the record she cited actually shows that he stated that he was unable to follow written instructions because he could not read. Compare AR 21 to AR 498. In other words, the ALJ based her decision, in part, on a contradiction in the record that is simply not there.

Plaintiff's here is correct in that the ALJ was inaccurate concerning written instructions as Plaintiff reported he was unable to follow them because he could not read.

Id.  However, notwithstanding this error the ALJ's reasoning, as explained below, is

sufficient to sustain the ALJ's final finding of non-disability.

Plaintiff continues:

Additionally, the ALJ did not discuss that he was diagnosed with a specific learning disability and that at 16 years old, his reading decoding skills were at the 1.8 grade equivalency level, his reading comprehension score was at the 1.6 grade equivalency level, and his composite reading score was at the 1.5 grade equivalency level. AR 625–26.

MSJ at 11.

However, the same records Plaintiff cites also note countervailing findings that are somewhat inconsistent with his alleged grade 1 reading level.  For instance, his "specific learning disability" was identified as "written expression" and not as "reading comprehension," even though the educator had the option to check both boxes on the applicable form.  AR 626.

Plaintiff continues further:

The ALJ also stated that Davis's contentions that he 1) needed assistance completing paperwork while working as a welder, 2) required help reading mail, and 3) had problems spelling did not prove he was illiterate. AR 23. She then discussed Davis's other allegations, which had nothing to do with his ability to read. Id. Additionally, the ALJ did not discuss that he was diagnosed with a specific learning disability and that at 16 years old, his reading decoding skills were at the 1.8 grade equivalency level, his reading comprehension score was at the 1.6 grade equivalency level, and his composite reading score was at the 1.5 grade equivalency level. AR 625–26.

Here, it was not unreasonable for the ALJ to discuss Plaintiff's "other allegations" as it could not have been predicted at the time of the two relevant ALJ hearings that counsel's basis for the current appeal would have focused exclusively on Plaintiff's learning disability.   In the end, both types of impairments were woven into the ALJ's overall factual summary.

Further, in evaluating a claimant's education as a vocational factor, the Social Security Administration uses the following categories:

(1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

6

(2) Marginal Education. Marginal Education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

(3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

(4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work....

20 C.F.R. § 404.1564(b)(1)-(4).

Because it specifically relates to Plaintiff's single claim of error, it's important to note that in reference to number (1) above, the record reveals that Plaintiff completed high school and attended 1 semester at Taft College (AR 85, 465). This educational record of the Plaintiff is certainly at odds with the above regulatory definition of illiteracy notwithstanding records stating that Plaintiff could only read at a first-grade level. Thus, up to this point Plaintiff's argument falls short to establish that the ALJ committed harmful error by declining to find Plaintiff illiterate.

In the alternative, Plaintiff argues as follows:

Even if Davis was not illiterate, the ALJ still erred by failing to ask the VE about how his limited reading skills affected his ability to work. Richard G, 2024 LEXIS 12115 at *14–15 (listing cases). This error is harmful because two of the three occupations that the ALJ relied on to find that Davis was not disabled have a language development level of two. By definition, occupations with a language development level of two require the following reading and writing abilities: Reading: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes. Writing: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs. DOT Appendix C § III, General Educational Development. Additionally, the VE testified that a document preparer now scans documents and works on a computer and the DOT states that an order clerk takes and records orders for food and beverage, makes suggestions about menu items, and calls out orders to kitchen employees. AR 113; DOT § 209.567-014.

The ALJ cannot rely on the remaining occupation, final assembler (which has a language development of one), to satisfy the Commissioner's step-five burden

7

of showing that there are a significant number of jobs in the national economy that Davis can perform. The VE testified that there were 14,000 of these jobs in the national economy (AR 173), but binding Ninth Circuit precedent holds that it was a "close call" about whether 25,000 jobs was sufficient to constitute a significant number of jobs. Guiterrez v. Comm'r of Soc. Sec., 740 F.3d 519 (9th Cir. 2014). Since 14,000 jobs presents no such close call, it cannot constitute a significant number of jobs.

MSJ at 13.

As to this argument Plaintiff contends, without support, that a language development level of two is incompatible with his reading level therefore rendering him unable perform two of the VE's identified jobs, specifically those of order clerk and document preparer.  Yet Plaintiff's only claim of error is described differently, e.g., "The RFC assessment is not supported by substantial evidence because the ALJ did not meet her burden of showing that Davis <u>was not illiterate</u>."  But again, illiteracy means little or no formal schooling. 20 C.F.R. § 404.1564(b)(1).

Plaintiff continues:

> The ALJ also stated that Davis's contentions that he 1) needed assistance completing paperwork while working as a welder, 2) required help reading mail, and 3) had problems spelling did not prove he was illiterate. AR 23. She then discussed Davis's other allegations, which had nothing to do with his ability to read. Id. Additionally, the ALJ did not discuss that he was diagnosed with a specific learning disability and that at 16 years old, his reading decoding skills were at the 1.8 grade equivalency level, his reading comprehension score was at the 1.6 grade equivalency level, and his composite reading score was at the 1.5 grade equivalency level. AR 625–26.

Although the record unquestionably shows that Plaintiff suffers from a number of learning disabilities, this fact alone has still not been shown to overcome the regulation's definition of illiteracy.

Continuing, Plaintiff argues that it was error for the ALJ to conclude that Plaintiff could perform the jobs of final assembler and document preparer. The argument is as follows:

> This error is harmful because two of the three occupations that the ALJ relied on to find that Davis was not disabled have a language development level of two. By definition, occupations with a language development level of two require the following reading and writing abilities:

8

Reading: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.

Writing: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.

DOT Appendix C § III, General Educational Development.

However, given that Plaintiff completed high school along with some college arguably demonstrates that he can perform jobs requiring a language development level of two.  Hence it has not been demonstrated that the ALJ committed harmful error by the inclusion of these two level two jobs.

Finally, even assuming for the moment that Plaintiff cannot perform jobs with a language level of two, the VE identified an additional job with a language level of one, namely final assembler.  Plaintiff contends that this third job does not cure the ALJ's error of including the above level two jobs for the following reason:

The ALJ cannot rely on the remaining occupation, final assembler (which has a language development of one), to satisfy the Commissioner's step-five burden of showing that there are a significant number of jobs in the national economy that Davis can perform. The VE testified that there were 14,000 of these jobs in the national economy (AR 173), but binding Ninth Circuit precedent holds that it was a "close call" about whether 25,000 jobs was sufficient to constitute a significant number of jobs. Guiterrez v. Comm'r of Soc. Sec., 740 F.3d 519 (9th Cir. 2014). Since 14,000 jobs presents no such close call, it cannot constitute a significant number of jobs.

MSJ at 13.

As noted, the Ninth Circuit in Guitierrez resolved this "close call" in favor of the Commissioner finding that 25,000 jobs was a sufficient number of jobs existing in the national economy.  Guiterrez v. Comm'r of Soc. Sec., 740 F.3d 519 (9th Cir. 2014).   However, the 9th Circuit has also held that:

Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer. As we have noted previously, the existence of two "isolated jobs" is not adequate to support a

9

finding that there is a significant number of jobs the claimant is able to perform. Walker v. Mathews, 546 F.2d 814, 820 (9th Cir. 1976). However, that is clearly not the case here, where 3,750 to 4,250 jobs exist within the claimant's limitations. The administrative law judge's finding of fact that the claimant is capable of performing jobs that exist in significant numbers is not clearly erroneous.

Martinez v Heckler, 807 F.2d 771, 775 (9th Cir, 1986).

In support of the ALJ's inclusion of the job of Final Assembler are the following cases, Montalbo v. Colvin, 231 F.Supp.3d 846, 863 (D. Haw. 2017) (finding 12,300 national jobs to be a significant number); Christine P. v. Comm'r of Social Sec. Admin., 2021 U.S. Dist. LEXIS 81004, 2021 WL 1649887, at *4 (D. Or. Apr. 27, 2021) (finding 14,900 national jobs to be a significant number); Mark M. v. Comm'r of Social Sec. Admin., 2020 U.S. Dist. LEXIS 242793, 2020 WL 7695848, at *4 (D. Or. Dec. 28, 2020) (finding 14,355 national jobs to be significant); Aguilar v. Colvin, 2016 U.S. Dist. LEXIS 88998, 2016 WL 3660296, at *3 (C.D. Cal. Jul. 8, 2016) (finding 11,850 national jobs to be a significant number); Evans v. Colvin, 2014 U.S. Dist. LEXIS 107921, 2014 WL 3845046, at *1 (C.D. Cal. Aug. 4, 2014) (finding 6,200 national jobs to be a significant number); Hoffman v. Astrue, 2010 U.S. Dist. LEXIS 26145, 2010 WL 1138341, at *6-7 (W.D. Wash. Mar. 19, 2010) (finding 9,000 national jobs to be a significant number).

In contrast, the following cases found that numbers above 14,000 did not constitute a significant number, Catherine G. v. Comm'r of Social Sec., 2021 U.S. Dist. LEXIS 75399, 2021 WL 1541178, at *3-4 (W.D. Wash. Apr. 20, 2021) (finding 17,700 national jobs is not a significant number); Dillon v. Saul, 2021 U.S. Dist. LEXIS 55701, 2021 WL 1124300, at *5 (D. Nev. Mar. 24, 2021) (finding 20,100 national jobs would not be a significant number)

Because the Ninth Circuit has declined to create a bright line rule regarding how many jobs constitute a significant number, the Court concludes that the ALJ did not commit harmful error when including Final Assembler as one of the three identified jobs.

**VI.     Conclusion and Order**

10

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.

Accordingly, it is ordered that:

1.  Plaintiff's motion for summary judgment (Doc. 10) is **DENIED**.

2.  Defendant's cross motion (Doc. 13) is **GRANTED.**

3.  The Commissioner's Decision is **AFFIRMED**

4.  The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated:    **May 14, 2026**            **/s/ Gary S. Austin**
                                       UNITED STATES MAGISTRATE JUDGE

11